1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    STEPHEN LEE LANDON,                    CASE NO. C23-1747JLR

11                         Plaintiff,        ORDER

12           v.

13    PLY-GEM WINDOWS,

14                         Defendant.

15                              **I.    INTRODUCTION**

16           Before the court is Defendant Ply-Gem Pacific Windows Corp.'s ("Ply-Gem"[1])

17    motion to dismiss *pro se* Plaintiff Stephen Lee Landon's complaint.  (MTD (Dkt. # 5);

18    Reply (Dkt. # 7).)  Although Mr. Landon filed no response to Ply-Gem's motion (*see*

19    *generally* Dkt.), he later filed a "motion for leave to amend complaint and return case to

20    state court."  (Mot. for Leave (Dkt. #8).)  The court has considered the parties'

21    _____

22    [1] Ply Gem Pacific Windows Corp. was incorrectly named in this action as "Ply-Gem
      Windows."  (Not. of Removal (Dkt. # 1) ¶ 13.)

1  submissions, the relevant portions of the record, and the applicable law.  Being fully

2  advised,[2] the court GRANTS Ply-Gem's motion to dismiss and DENIES Mr. Landon's

3  motion for leave as moot.

## II.  BACKGROUND

5      Mr. Landon is a former employee of Ply-Gem who was "abruptly let go" on July

6  10, 2023.  (Compl. (Dkt. # 1-2) ¶¶ 7, 13.)  Mr. Landon claims to have been performing to

7  Ply-Gem's expectations earlier that year, as he was meeting targets and received both a

8  pay increase and a $4,000 bonus.  (*Id.* ¶ 7.)  Subsequently, however, Mr. Landon received

9  "'strange' write-ups" regarding several incidents in which Mr. Landon allegedly hired too

10  many new employees, left work early due to a family emergency, and caused an

11  accumulation of "back orders."  (*Id.* ¶¶ 8-11.)  Mr. Landon was also told that he had been

12  performing certain work incorrectly for 16 years and was subjected to "disparaging

13  comments about his nationality (half British) and age."  (*Id.* ¶¶ 12, 14.)  Mr. Landon

14  asserts that at some point, he made "complaints about disparate treatment and unfair labor

15  practices."  (*Id.* ¶ 22.)

16      These events culminated in Mr. Landon's termination upon returning from a

17  week-long vacation in July.  (*Id.* ¶ 13.)  Mr. Landon's "personal phone was taken, he was

18  given a sheet with information on unemployment and retirement, and was escorted from

19  the building without being offered a severance package."  (*Id.*)  Mr. Landon alleges that

---

21     [2] Neither party has requested oral argument (*see* MTD at 1; Mot. for Leave at 1), and the
court determines that oral argument would not be helpful to its disposition of the motion, *see*
22  Local Rules W.D. Wash. LCR 7(b)(4).

1   "he was targeted due to his nearing retirement age, which has left him in a state of

2   depression, financial uncertainty, and facing difficulties in finding new employment due

3   to his age." (*Id.* ¶ 14.)  He also alleges that he "was subjected to retaliatory conduct,

4   including [the] 'strange' write-ups and ultimately wrongful termination, in response to his

5   complaints about disparate treatment and unfair labor practices." (*Id.* ¶ 22.)

6   Acting *pro se*, Mr. Landon filed suit in King County Superior Court on September

7   26, 2023. (*Id.* at 1.)  The complaint raises the following claims:  (1) age discrimination

8   under the Age Discrimination in Employment Act of 1967 ("ADEA"); (2) retaliation

9   under Title VII of the Civil Rights Act of 1964; (3) wrongful termination; and

10  (4) intentional infliction of emotional distress ("IIED"). (*Id.* ¶¶ 15-36.)  After being

11  served with the summons and complaint on October 17, 2023, Ply-Gem timely removed

12  the matter to this court on November 15, 2023, asserting both federal question and

13  diversity subject matter jurisdiction. (Not. of Removal (Dkt. # 1) ¶¶ 2, 7-22.)

14  Shortly thereafter, Ply-Gem moved to dismiss the complaint for failure to state a

15  claim. (*See generally* MTD.)  Mr. Landon did not respond to that motion. (*See generally*

16  Dkt.)  On January 9, 2024, however, Mr. Landon filed a motion for leave to amend the

17  complaint, in which he seeks to abandon his federal claims and to add discrimination and

18  retaliation claims under Washington law. (Mot. for Leave at 3; *see also id.*, Ex. A.)

19  Because he only seeks to pursue state-law claims, Mr. Landon also asks the court to

20  remand this case back to state court. (*Id.* at 3-4.)

21  //

22  //

ORDER - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

### III.    ANALYSIS

Below, the court addresses Ply-Gem's motion to dismiss as it is dispositive of both parties' motions.  The court sets forth the legal standard governing dismissal before turning to Ply-Gem's motion to dismiss.

### A.    Legal Standard

Because Mr. Landon is a *pro se* Plaintiff, the court must construe his pleadings liberally.  *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992).  Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see also* Fed. R. Civ. P. 8(a)(2) (requiring the plaintiff to provide "a short and plain statement of the claiming showing that the pleader is entitled to relief").  Under this standard, the court construes the allegations in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court need not accept as true legal conclusions, "formulaic recitation[s] of the legal elements of a cause of action," *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

1  U.S. at 678.  Although the pleading standard announced by Federal Rule of Civil

2  Procedure 8 does not require "detailed factual allegations," it demands more than "an

3  unadorned, the-defendant-unlawfully harmed-me accusation."  *Iqbal*, 556 U.S. at 678

4  (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a).  "[A]ll the Rules require

5  is a short and plain statement of the claim' that will give the defendant fair notice of what

6  the plaintiff's claim is and the grounds upon which it rests.'"  *Yamaguchi v. U.S. Dep't of*

7  *the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S.

8  41, 47 (1957)).

9  **B.     Ply-Gem's Motion to Dismiss**

10          The court addresses Mr. Landon's claims in turn, below.

11          1.  Discrimination and Retaliation Under the ADEA and Title VII

12          Mr. Landon's discrimination and retaliation claims under the ADEA and Title VII

13  fail for two reasons:  (1) Mr. Landon has not shown that he exhausted his administrative

14  remedies prior to filing suit, and (2) the factual allegations fail to meet minimum pleading

15  requirements.  The court first addresses administrative exhaustion before turning to the

16  specific facts supporting Mr. Landon's claims under the ADEA and Title VII.

17              *a.  Administrative Exhaustion*

18          Administrative exhaustion is a prerequisite to filing suit under the ADEA and Title

19  VII.  29 U.S.C. § 626(d)(1) (the ADEA); 42 U.S.C. § 200e-5(e)(2) (Title VII); *see also,*

20  *e.g.*, *Sanchez v. Pac. Powder Co.*, 147 F.3d 1097, 1100 (9th Cir. 1998) (holding that

21  ADEA plaintiffs timely filed their EEOC charges); *MacDonald v. Grace Church Seattle*,

22  457 F.3d 1079, 1088 (9th Cir. 2006) (affirming dismissal of Title VII claims where the

1  plaintiff failed to timely file an EEOC charge).  This means a plaintiff generally must file

2  a charge with the EEOC and obtain a right-to-sue letter before bringing civil claims.

3  *E.g.*, *Scott v. Gino Morena Enters.*, LLC, 888 F.3d 1101, 1106 (9th Cir. 2018).  Because

4  Washington is a "deferral state," a plaintiff must file his EEOC charge within 300 days of

5  the allegedly offending conduct.  29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 2000e-5(e)(1);

6  *see also Sanchez*, 147 F.3d at 1099 (ADEA); *Dumbaugh v. Kasson*, No. C09-5469RBL,

7  2009 WL 3186107, at *4 (W.D. Wash. Oct. 1, 2009) (Title VII).  This filing requirement

8  "is subject to waiver, estoppel, and equitable tolling."  *Johnson v. Lucent Techs. Inc.*, 653

9  F.3d 1000, 1009 (9th Cir. 2011) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385,

10  393 (1982)).

11      Mr. Landon's complaint says nothing about administrative exhaustion, and it

12  therefore appears that Mr. Landon failed to timely file a charge with the EEOC.  (*See*

13  *generally* Compl.)  Accordingly, Mr. Landon's discrimination and retaliation claims

14  under the ADEA and Title VII are DISMISSED without prejudice and with leave to

15  amend.  If Mr. Landon wishes to continue pursuing these claims, he must file an amended

16  complaint setting forth factual allegations establishing that he timely filed a charge with

17  the EEOC and received a right-to-sue letter prior to commencing this action.

18          b.  *Facial Plausibility:  Age Discrimination Under the ADEA*

19      Even if Mr. Landon had timely exhausted his administrative remedies, the

20  complaint fails to offer sufficient factual allegations to state an age discrimination claim

21  under the ADEA.  The ADEA prohibits an employer from, among other things,

22  discharging an employee "because of" that employee's age.  29 U.S.C. § 623(a)(1); *see*

ORDER - 6

*also* 29 U.S.C. § 631(a) (stating that the ADEA protects those aged 40 and above).  To establish a *prima facie* case of age discrimination, Mr. Landon must allege that he was: (1) at least 40 years old; (2) performing his job satisfactorily; (3) discharged; and (4) "either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (cleaned up).  "An inference of discrimination can be established by showing the employer had a continuing need for the employee['s] skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably." *Id.* at 1049-50.

Here, Mr. Landon alleges that he is over 40 years old, was performing his job satisfactorily, and was discharged, but he fails to meet the fourth element of a *prima facie* case under the ADEA.  (Compl. ¶¶ 7, 16, 13.)  *See Sheppard*, 694 F.3d at 1049.  As Ply-Gem points out (MTD at 4), Mr. Landon fails to allege that he was replaced by someone substantially younger with equal or inferior qualifications.  (*See generally* Compl.; *id.* ¶ 18 ("[I]t is only during discovery where we will know whether the Plaintiff was replaced by someone younger.").)  And even accepting Mr. Landon's factual allegations as true, the court concludes that they do not give rise to an inference of discrimination as pleaded—though barely.  Although Mr. Landon alleges that a manager named Justin made "disparaging comments" about his age, Mr. Landon does not describe those comments.  (*Id.* ¶ 14.)  And Mr. Landon makes no allegation that his duties "were still being performed" following his discharge, or that others outside of his protected

1    class "were treated more favorably."  *See Sheppard*, 694 F.3d at 1049 (reversing

2    dismissal of ADEA claim where the employee alleged that "five younger comparators

3    kept their jobs," which gave rise to an inference of age discrimination).

4         The court therefore DISMISSES Mr. Landon's age discrimination claim under the

5    ADEA on the alternative ground that he has failed to state a claim upon which relief can

6    be granted.  *See, e.g.*, *Mendoza v. Macy's Inc.*, No. 1:19-cv-01156-DAD-SKO, 2019 WL

7    4572103, at *4 (E.D. Cal. Sept. 20, 2019) (dismissing claim under the ADEA where the

8    plaintiff failed to allege she was replaced by someone younger).  If Mr. Landon wishes to

9    continue pursuing this claim, he must file an amended complaint with factual allegations

10   demonstrating not only that he properly exhausted his administrative remedies, but also

11   that either (1) he was replaced by someone substantially younger with equal or inferior

12   qualifications, or (2) other circumstances exist that give rise to an inference of age

13   discrimination, for example if similarly situated but younger employees kept their jobs.

14        *c.  Facial Plausibility:  Retaliation Under Title VII*

15        Mr. Landon also fails to state a retaliation claim under Title VII.  Title VII

16   prohibits retaliatory employment actions against an employee because he has "opposed

17   any practice made an unlawful employment practice by [Title VII], or because he has

18   made a charge, testified, assisted, or participated in any manner in an investigation,

19   proceeding, or hearing [pursuant to Title VII]."  42 U.S.C. § 2000e-3(a).  To establish a

20   claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected

21   activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a

22   causal link between the plaintiff's protected activity and the adverse employment action.

1   *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021).  Making formal or informal

2   complaints about discrimination in the workplace is a protected activity.  *Ray v.*

3   *Henderson*, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).  And "termination plainly qualifies

4   as an adverse employment action."  *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797,

5   803 (9th Cir. 2009).

6         Here, Mr. Landon vaguely alleges that he engaged in protected activities when he

7   made "complaints about disparate treatment and unfair labor practices," and that as a

8   result, he received "'strange' write ups"[3] and was ultimately fired.  (Compl. ¶ 22; *see also*

9   *id.* ¶ 23 ("Plaintiff engaged in a protected activity such as filing or reporting a complaint

10  of discrimination and disparate treatment.").  Although making or filing a complaint

11  about disparate treatment could constitute a protected activity for purposes of Title VII,

12  *Ray*, 217 F.3d at 1240 n.3, Mr. Landon fails to provide any detail regarding the

13  circumstances of his complaints such as when he made them, to whom, and what they

14  were about.  (*See generally* Compl.)  Without more, the court cannot discern any causal

15  link between Mr. Landon's allegedly protected activities and his ultimate termination

16  because it is not clear whether Ply-Gem even knew about Mr. Landon's grievances.[4]  The

17

18     [3] The complaint is not a picture of a clarity with respect to these "'strange' write-ups.'"
(Compl. ¶ 22, 28.)  One section of the complaint alleges that Mr. Landon received "'strange
19  write-ups" in retaliation for "his complaints about disparate treatment and unfair labor practices"
(*id.* ¶ 22); in other words, Mr. Landon alleges the write-ups were an adverse action for Title VII
20  purposes.  But elsewhere in the complaint, Mr. Landon alleges he "reported the 'strange'
write-ups to HR and was subsequently fired" (*id.* ¶ 28), i.e., reporting the write-ups was a
21  protected activity, rather than an adverse action.  This factual inconsistency further supports the
court's conclusion that Mr. Landon has failed to state a retaliation claim.

22     [4] Although the complaint states that Ply-Gem "knew about the protected activity (age)"
(Compl. ¶ 25), this statement appears to allege that Ply-Gem knew about Mr. Landon's age—not

1   complaint as pleaded fails to provide fair notice of the basis of Mr. Landon's retaliation

2   claim. *Yamaguchi*, 109 F.3d at 1481.

3       The court therefore DISMISSES Mr. Landon's retaliation claim under Title VII

4   without prejudice and with leave to amend. *See, e.g.*, *Hatfield v. DaVita Healthcare*

5   *Partners*, No. C 13-5206 SBA, 2014 WL 21111237, at *6-7 (N.D. Cal. May 20, 2014)

6   (dismissing retaliation claim where the plaintiffs claimed to have been terminated after

7   complaining about "unlawful and discriminatory employment practices" but provided no

8   detail about their complaints). If Mr. Landon wishes to continue pursuing this claim, he

9   must file an amended complaint with factual allegations demonstrating not only that he

10  properly exhausted his administrative remedies, but also that he engaged in a protected

11  activity and that there is a causal link between that activity and his termination. In

12  particular, Mr. Landon must include short, plain statements describing: (1) the number of

13  complaints he made; (2) the timing of those complaints; (3) where or to whom he made

14  those complaints; (4) the subject matter of those complaints; and (5) whether, when, and

15  how Ply-Gem had notice of those complaints.

16      2. Wrongful Termination

17      Mr. Landon next raises a wrongful termination claim under "[f]ederal law[]," but

18  fails to articulate the legal basis for that claim. As the court understands it, Mr. Landon

19  raises three possible bases for a wrongful termination claim: age discrimination,

20  retaliation for engaging in protected activities, and breach of Mr. Landon's employment

21  

22  _____

    that Ply-Gem knew about Mr. Landon's complaints concerning disparate treatment in the
    workplace. Being aged 40 or older is not itself a protected activity.

1  contract.  (*See* Compl. ¶¶ 27-29.)  The court has already addressed termination on the

2  basis of age and protected activities.  (*See supra* § B.1.)  Remaining to be addressed is

3  Mr. Landon's claim that he was wrongfully terminated in violation of his employment

4  contract, which the court liberally construes as a breach of contract claim.  (*See* Compl.

5  ¶ 29 ("[T]he Plaintiff had a written or implied employment contract promising job

6  security.  The Defendant fired the Plaintiff in violation of that contract, which constitutes

7  wrongful termination.").)

8          Generally, "[i]n a breach of contract action, the plaintiff must prove that a valid

9  agreement existed between the parties, the agreement was breached, and the plaintiff was

10  damaged."  *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 404 P.3d 559, 566 (Wash. Ct. App.

11  2017); *see also Kloss v. Honeywell, Inc.*, 890 P.2d 480, 483 (Wash. Ct. App. 1995)

12  ("Employment contracts are governed by the same rules as other contracts.").  Although

13  Mr. Landon makes the bare allegation that he "had a written or implied employment

14  contract promising job security" (Compl. ¶ 29), this is insufficient to state a claim for

15  breach of contract because Mr. Landon fails to specifically identify the contract term or

16  provision that he claims was breached.  The court therefore DISMISSES Mr. Landon's

17  breach of contract claim without prejudice and with leave to amend.  If Mr. Landon

18  wishes to continue pursuing this claim, he must file an amended complaint with factual

19  allegations identifying a valid contract provision that he asserts was breached upon his

20  discharge.

21  //

22  //

1          3.  <u>IIED</u>

2          Finally, Mr. Landon fails to state a claim for IIED.  To prove such a claim, a

3   plaintiff must establish the following elements: (1) extreme and outrageous conduct,

4   (2) intentional or reckless infliction of emotional distress, and (3) the actual result of

5   severe emotional distress to the plaintiff.  *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash.

6   2003).  The first element requires proof that the conduct was "so outrageous in character,

7   and so extreme in degree, as to go beyond all possible bounds of decency, and to be

8   regarded as atrocious, and utterly intolerable in a civilized community."  *Robel v.

9   Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002) (quoting *Dicomes v. State*, 782 P.2d

10  1002, 1012 (Wash. 1989)).  Under Washington law, the fact of discharge alone is

11  insufficient to support an IIED claim, but "the manner in which a discharge is

12  accomplished . . . might constitute outrageous conduct."  *Dicomes*, 782 P.2d at 1013.

13  Although the elements of IIED involve fact questions that are generally reserved for the

14  jury, courts regularly dismiss IIED claims where reasonable minds could not differ as to

15  whether the conduct was sufficiently extreme to result in liability.  *See Bell v. FDIC*, No.

16  C09-0150RSL, 2010 WL 113996, at *1 (W.D. Wash. Jan. 6, 2010); *see also, e.g.*,

17  *Lemelson v. Wells Fargo Bank, N.A.*, 641 F. Supp. 3d 1005, 1014-15 (W.D. Wash. 2022)

18  (dismissing intentional infliction of emotional distress claim upon determining the

19  alleged conduct was neither extreme nor outrageous as a matter of law).

20          Here, Mr. Landon asserts an IIED claim based on Ply-Gem's "actions of age

21  discrimination."  (Compl. ¶ 31.)  These actions allegedly included "'strange' write-ups"

22  by HR, disparaging age-related comments by a colleague (though the complaint fails to

1    specify what those comments were), and Mr. Landon's abrupt termination.  (*Id.* ¶¶ 11,

2    13-14.)  Unspecified disparaging comments are insufficient to support an IIED claim.

3    *Dicomes*, 782 P.2d at 1013 ("[M]ere insults and indignities, such as causing

4    embarrassment or humiliation, will not support imposition of liability on a claim of

5    [IIED].").  Moreover, Ply-Gem's conduct in terminating Mr. Landon's employment was

6    not so extreme and outrageous as to state a claim for IIED.  Mr. Landon merely alleges

7    that he "was abruptly let go," and that "[h]is personal phone was taken, he was given a

8    sheet with information on unemployment and retirement, and was escorted from the

9    building without being offered a severance package." (Compl. ¶ 13.)  Even assuming Mr.

10   Landon was terminated for age-related pretextual reasons, the circumstances of his

11   discharge cannot be described as atrocious and utterly intolerable in a civilized

12   community.  *See Dicomes*, 782 P.2d at 1013 (concluding that employer's conduct did not

13   support IIED claim, even assuming that the employer acted with malice in creating a

14   pretextual and false report in order to terminate the plaintiff).  Reasonable minds could

15   not differ on this point.

16        The court therefore DISMISSES Mr. Landon's IIED claim without prejudice and

17   with leave to amend.  If Mr. Landon wishes to continue pursuing this claim, he must file

18   an amended complaint setting forth factual allegations describing Ply-Gem's extreme and

19   outrageous conduct, which must be "so extreme in degree, as to go beyond all possible

20   bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

21   community." *Robel*, 59 P.3d at 619 (quoting *Dicomes*, 782 P.2d at 1012).

22   //

ORDER - 13

1    **C.     Leave to Amend**

2          A district court should not dismiss a *pro se* complaint "without leave to amend

3    'unless it is absolutely clear that the deficiencies of the complaint could not be cured by

4    amendment.'"  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v.*

5    *Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam)).  Although Mr. Landon

6    has failed to plausibly plead his claims, the court cannot conclude that "it is absolutely

7    clear that the deficiencies of the complaint could not be cured by amendment."  *Id.* at

8    1212.  Thus, the court GRANTS Mr. Landon leave to file an amended complaint that

9    cures the deficiencies identified in this order with respect to the following claims:  (1) age

10   discrimination under the ADEA; (2) retaliation under Title VII; (3) breach of contract;

11   and (4) IIED.  Further, the court GRANTS Mr. Landon leave to file an amended

12   complaint that adds new claims under Washington law for age-based discrimination and

13   retaliation.[5]  Mr. Landon shall file his amended complaint, if any, by no later than

14   **February 1, 2024**.  If Mr. Landon fails to timely comply with this order or fails to file an

15   amended complaint that remedies the deficiencies discussed in this order, the court will

16   dismiss his complaint without leave to amend and close this case.

17   //

18

19   _____

20        [5]  In his motion for leave, Mr. Landon explains that he "seeks leave to amend the complaint to allege only violations of state law and to return this matter to state court."  (Mot. for Leave at 3.)  The court notes that Ply-Gem removed this action on the basis of both diversity subject matter jurisdiction and federal question subject matter jurisdiction.  (Not. of Removal

21   ¶¶ 7-22.)  Accordingly, if Mr. Landon chooses to file an amended complaint that raises only state law claims, he is advised that doing so will not necessarily preclude the court's subject matter

22   jurisdiction over this action.

ORDER - 14

## IV.   CONCLUSION

For the reasons explained above, the court GRANTS Ply-Gem's motion to dismiss (Dkt. # 5) and DENIES Mr. Landon's motion for leave (Dkt. # 8) as moot.

Dated this 11th day of January, 2024.

JAMES L. ROBART
United States District Judge